**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| BEATRIZ HERNANDEZ,<br>Plaintiff,<br>v.<br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br>Defendant. | ) | Case No. CV 06-1893-JCR<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff seeks review of the decision of Defendant, the Commissioner of the Social Security Administration, denying her application for Supplemental Security Income Benefits (hereinafter "SSI"). As discussed below, this Court affirms the decision of the Commissioner.

## I. PROCEEDINGS

Plaintiff filed a Complaint on March 29, 2006, seeking review of the Commissioner's denial of her application for disability benefits. On August 10, 2006, Defendant served the certified Administrative Record ("AR"), and on September 9, 2006, Defendant filed an Answer. On December 19, 2006, the parties filed a Joint Stipulation ("JS").[1]

Thus, this matter is now ready for decision. As the Court advised the parties in its April

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to the Magistrate Judge conducting any and all further proceedings in the instant matter and ordering the entry of final judgment.

3, 2006, Case Management Order, the decision in this case will be made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court will determine which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

## II.  FIVE-STEP SEQUENTIAL EVALUATION TO DETERMINE DISABILITY

### A.  Initial Five-Step Analysis

A disability claimant must show that a medically determinable physical or mental impairment prevents the claimant from engaging in substantial gainful activity and that the impairment is expected to result in death or to last for a continuous period of at least twelve months. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998); 42 U.S.C. § 423(d)(1)(A) (2007).

Disability claims are evaluated according to the five-step procedure described below. *See Bowen v. Yucker*, 482 U.S. 137, 140-42 (1987); *Reddick*, 157 F.3d at 721; *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995, *as amended* April 9, 1996); 20 C.F.R. §§ 404.1520, 416.920 (2007).

> **Step One:** Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> **Step Two:** Does the claimant have a "severe impairment"? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> **Step Three:** Does the claimant's impairment or combination of impairments meet or equal an impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (hereinafter "the Listings")? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> **Step Four:** Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

> **Step Five:** Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester*, 81 F.3d at 828 n.5.

The term "severe," as used in Step Two, means any impairment or combination of impairments that significantly limits the physical or mental ability to perform basic work activities. Residual functional capacity ("RFC") is what a claimant can still do despite existing "exertional" (*i.e.*, strength related) and "nonexertional" limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 nn.5-6 (9th Cir. 1989). Nonexertional limitations restrict ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations. *Penny v. Sullivan*, 2 F.3d 953, 958 (9th Cir. 1993); *Cooper*, 880 F.2d at 1155 n.7; 20 C.F.R. § 404.1569a(c) (2007).[2]

A claimant has the burden (through Step Four) of proving inability to perform past relevant work. *Reddick*, 157 F.3d at 721; *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). If this burden is met, a *prima facie* case of disability is established and the burden shifts to the Commissioner (Step Five) to establish that the claimant can perform alternative work. *Reddick*, 157 F.3d at 721; *Drouin*, 966 F.2d at 1257; 20 C.F.R. §§ 404.1520, 416.920. The Commissioner can meet this burden by reference to the Medical-Vocational Guidelines ("Grids") at 20 C.F.R. Part 404, Subpart P, App. 2, or by relying on vocational expert ("VE") testimony. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001) (*citing Desrosiers v. Sec'y of Health & Servs.*, 846 F.2d 573, 576-77). If VE testimony is used, "the [VE] must identify a specific job or jobs in the national economy having requirements that the claimant's physical and

---

[2] Nonexertional limitations include difficulty in one or more of the following: functioning because of nervousness, anxiety or depression, maintaining attention or concentration; understanding instructions; seeing or hearing, tolerating physical features of a work setting; and manipulative or postural functions (*e.g.* reaching, handling, stooping or crouching). *See* 20 C.F.R. § 404.1569a(c)(1) (2007). Pain may be either an exertional or nonexertional limitation. *Penny*, 2 F.3d at 959; *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c) (2007).

mental abilities and vocational qualifications would satisfy." *Osenbrock*, 240 F.3d at 1162-63.

## III. **BACKGROUND**

On November 4, 2003, Plaintiff, then age forty-four, filed an application for disability benefits. (AR at 45-49.) Plaintiff alleged disability on the bases of depression, anxiety, fear and hearing voices, and suicidal thoughts. (AR at 15, 25.) Her application was denied initially and on reconsideration. (AR at 24-29.) Subsequently, Plaintiff sought a hearing. (AR at 23.) A hearing was held on January 4, 2005, before an Administrative Law Judge ("ALJ"). (AR at 179-197.) Plaintiff appeared with her attorney and testified on her own behalf with the assistance of an interpreter. (AR at 179-197.) The ALJ heard testimony from Plaintiff's husband, Mr. Regulo Hernandez, also with the aid of an interpreter. (AR at 188-91.) Mr. Hernandez testified that Plaintiff had been hospitalized due to her mental problems and that she continues to receive outpatient care. (AR at 190-191.) Mr. Hernandez also testified that he drives Plaintiff to her psychiatric appointments and that Plaintiff has never had a driver's license. (AR at 190.) Finally, Mr. Hernandez testified that Plaintiff rarely prepares meals for their family[3] and that Plaintiff's medication makes her dizzy and sleepy. (AR at 191.) The ALJ also heard testimony from a VE, who described Plaintiff's past experience as a sewing machine operator as light work. (AR at 192.)

On May 23, 2005, the ALJ issued his opinion in this matter, which applied the Five-Step sequential evaluation of disability. (AR at 21.) Regarding Step One, the ALJ found "[t]here is no indication that [Plaintiff] has engaged in any substantial gainful activity." (AR at 15.) As to Step Two, the ALJ found that Plaintiff suffered from medically determinable impairments, including major depressive disorder, anxiety disorder, and a personality disorder, which were deemed "severe" impairments. (AR at 15, 21.) Concerning Step Three, the ALJ concluded that Plaintiff's impairments did not medically meet or equal one of the listed impairments in 20

---

[3] Mr. Hernandez explained that Plaintiff cooks family meals once a week at most. (AR at 191.)

C.F.R. Part 404, Subpart P, Appendix 1. (AR at 15.) The remainder of the ALJ's analysis focused on Step Four. From this analysis, the ALJ found that Plaintiff's allegations regarding her limitations were "incredible." (AR at 21.) In addition, the ALJ determined that Plaintiff had "no impairment based exertional limits on her ability to work" and Plaintiff could understand, remember, and carry out simple instructions. (*Id.*) Accordingly, the ALJ determined that Plaintiff's past relevant work as a sewing machine operator did not require the performance of work-related activities precluded by her RFC. (*Id.*) Therefore, the ALJ denied Plaintiff benefits based on his finding that she was not under a "disability" as defined by the Social Security Act ("Act").[4] (AR at 11-21.)

Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. (AR at 9.) The Appeals Council ultimately denied review, thereby making the decision of the ALJ the final decision of the Commissioner in this matter. (AR at 4-8.)

On March 29, 2006, Plaintiff timely filed the instant action, seeking judicial review of the denial of benefits by the Commissioner.

## IV. DISPUTED ISSUES

The parties have stipulated that the following three issues are in dispute:

(1) Whether the ALJ improperly assessed the credibility of the testimony from Plaintiff and the lay witness;

(2) Whether the ALJ failed to accord proper weight to the treating physician's opinion; and,

(3) Whether the ALJ improperly assessed Plaintiff's ability to communicate in English.[5]

(JS at 9-10.)

---

[4] Because the ALJ concluded Plaintiff was able to perform her past work at Step Four, he did not address Step Five.

[5] The Court lists these issues in the order it addresses them rather than in the order presented in the JS.

## V. STANDARD OF REVIEW

Under § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers*, 846 F.2d at 575-76. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

## VI. DISCUSSION

### A. The ALJ Made a Proper Credibility Determination Regarding Plaintiff and Mr. Hernandez

Plaintiff contends that the ALJ improperly discounted her testimony and the testimony of her husband, Mr. Hernandez. (JS at 9.) In contrast, Defendant contends the ALJ properly rejected both testimonies. (JS at 18-22.)

1. The ALJ properly assessed Plaintiff's testimony

Defendant contends the ALJ properly considered Plaintiff's statements, and stated specific reasons for discounting Plaintiff's testimony, which included: (1) evaluations of Plaintiff by Dr. N. Paculdo and Dr. Richard A. Starrett[6] suggested malingering by Plaintiff, and (2) Plaintiff's present statements were inconsistent with her prior statements. (JS at 18-21.)

The ALJ is not required to blindly accept as true every allegation made by a plaintiff.

---

[6] Dr. Paculdo and Dr. Starrett examined Plaintiff as consulting physicians in February 2004 and February 2005, respectively. (*See* AR 125-130; 160-172.)

*Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). In fact, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability . . . there must be medical signs and findings . . . which show the existence of a medical impairment . . . which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 423(d)(5)(A) (2007); *see Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989); *Fair*, 885 F.2d at 600. At the same time, "once the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of the pain." *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*citing Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986)).

If the ALJ finds a claimant's testimony as to the severity of pain and impairments unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *See Bunnell*, 947 F.2d at 345-46. However, the ALJ is only required to provide clear and convincing reasons for rejecting the claimant's testimony when there is no affirmative evidence of malingering. *See Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996). To determine whether a plaintiff's subjective testimony of her symptoms is credible, the ALJ may consider, among other things, the following evidence: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Smolen*, 80 F. 3d at 1284; *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (listing factors such as (1) a claimant's reputation for truthfulness; (2) inconsistencies either in her testimony or between her testimony and her conduct; (3) her daily activities; (4) her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains). If the ALJ's credibility finding is supported by substantial evidence in the record, this Court may not engage in second-guessing. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599

(9th Cir. 1999).

Here, the ALJ determined the record reflected affirmative evidence of Plaintiff's malingering. In particular, the ALJ cited to the psychiatric testing administered by Dr. Starrett, and stated, "[d]uring the Test of Memory Malingering, scoring indicated the claimant was under responding and thus exaggerating her memory problems. The SIMMS Test for Malingering also produced results consistent with exaggeration." (AR at 18.) Accordingly, Dr. Starrett's test results provided objective medical evidence to support the ALJ's determination that Plaintiff was malingering.

Furthermore, the ALJ cited numerous inconsistent statements made by Plaintiff, which the ALJ concluded "significantly lessen[ed] her credibility." (AR at 19.) For example, during the hearing before the ALJ, Plaintiff could not recall where she attended school or what kind of work she last performed, although Plaintiff gave specific responses to these same inquiries during her psychiatric examinations. (*Id*.) In fact, Plaintiff informed Dr. Paculdo and Dr. Starrett of her age, birthday, working history, school background, and hospitalization history. (AR at 125-26, 160-61.) Also, Plaintiff alleged an inability to leave her home, while her husband reported that Plaintiff went to the market, the mall, or sometimes to the beach when she felt well. (AR at 19, 61, 69.) Plaintiff also alleged that she had never driven or obtained a driver's license, while Dr. Paculdo reported that Plaintiff had driven herself to the clinic for her psychiatric examination. (AR at 69, 125.)

In addition, there were inconsistencies in both the symptoms Plaintiff reported to Dr. Paculdo and Dr. Starrett and in how she physically presented herself to these doctors and the ALJ. Dr. Paculdo described Plaintiff as having a "normal gait, with no abnormal movements noted." (AR at 126.) Dr. Paculdo also noted the Plaintiff "admits hearing voices." (AR at 126-27.) In contrast, Dr. Starrett noted Plaintiff's "posture and gait were affected by her health condition." (AR at 160.) Dr. Starrett also explained that Plaintiff "denies any auditory or visual hallucinations." (AR at 161-62.) The ALJ concluded, in light of Plaintiff's "behavior at the hearing appear[ing] contrary to her presentations during the consultative examinations," he must "infer the claimant was exaggerating her symptoms at the hearing in order to obtain disability

benefits." (AR at 19.)

A review of the record indicates there was substantial evidence of Plaintiff's malingering. The ALJ relied on a preponderance of Plaintiff's inconsistent statements and behavior as well as the results of Plaintiff's psychiatric examinations to conclude that Plaintiff was exaggerating her symptoms and disability. The ALJ's findings regarding his determination as to the credibility of Plaintiff's testimony concerning the severity of her pain and impairments are sufficiently specific to permit the Court to conclude that the ALJ did not arbitrarily discredit Plaintiff's testimony. *See Bunnell*, 947 F.2d at 345-46. Additionally, the Court finds that this determination is supported by substantial evidence in the record, and thus, the ALJ did not err in discounting Plaintiff's testimony. *See Morgan*, 169 F.3d at 599.

2. The ALJ properly assessed Mr. Hernandez's testimony

Plaintiff also contends the ALJ failed to properly assess Mr. Hernandez's lay witness testimony. (JS at 17-18.) Defendant responds that the ALJ properly discounted the testimony of Mr. Hernandez testimony, Plaintiff's only lay witness. (JS at 20-22.)

The Ninth Circuit has recognized that lay witnesses such as "friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [her] condition." *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) (citations omitted). If an ALJ disregards this evidence, it "violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." 20 C.F.R. § 404.1513(e)(2) (2007). *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987); *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (stating that an ALJ must consider lay witness testimony).

If the ALJ wishes to discredit the testimony of lay witnesses, "he must give reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919. For example, "one reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence." *Lewis*, 236 F.3d at 511 (*citing Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984)). In fact, the Ninth Circuit has recognized that it is not reversible error for an ALJ to omit a discussion of lay witness testimony when that testimony is in conflict with the available medical evidence. *Vincent*, 739

F.2d at 1395. Lay witness testimony "is not the equivalent of 'medically acceptable . . . diagnostic techniques' that are ordinarily relied upon to establish a disability." *Id.* (*citing* 42 U.S.C. § 423(d)(3) (1984)). However, the ALJ's reasons for rejecting a lay witness's testimony must be supported by substantial evidence. *Regennitter v. Comm'r of the Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999).

Here, the record provides substantial evidence to support the ALJ's finding that Mr. Hernandez's testimony was not credible because his testimony conflicted with the medical evidence. *See Lewis*, 236 F.3d at 511. In making his determination regarding Mr. Hernandez's testimony, the ALJ remarked that, while he "considered the claimant's testimony and the testimony of the witness," he found "their statement[s] self-serving, inconsistent and not credible or consistent with the remainder of the record." (AR at 19.) The ALJ then discussed and discredited Mr. Hernandez's opinions stated in Plaintiff's Function Report Adult-Third Party ("Third Party Form")[7] and his oral testimony at Plaintiff's hearing. (AR at 18.)

In the Third Party Form and hearing testimony, Mr. Hernandez stated the Plaintiff used to be very social, but she no longer spends time with others since becoming ill. (AR at 58, 61.) Mr. Hernandez further stated that Plaintiff used to do chores, but no longer preformed such tasks. (AR at 58-59, 191.) He added that Plaintiff needs to be reminded to take her medication. (AR at 59.) Mr. Hernandez also stated that Plaintiff cannot remember where she is when she is outside.

---

[7] The record contains evidence that at least suggests Mr. Hernandez did not fill out the Third Party Form. For example, the following answers appear in this form:

question 16: "*I* can not do outside chores."

question 21: "*I* just want to rest."

question 22: "[I]f *I* don't take my medicine, *I* don't have control of stress."

(AR at 59, 62, 63) (emphasis added.)

These answers appear to have come from Plaintiff rather than Mr. Hernandez. However, for purposes of the Court's analysis herein, it will assume the form was completed by Mr. Hernandez and that any confusion regarding first or third-person answers will be deemed due to the language barrier Mr. Hernandez faces writing in his second language (English).

(AR at 60, 190.) He alleged that Plaintiff is unable to pay bills, handle a savings account, or use a checkbook because she is completely unable to concentrate. (AR at 60-61.) Finally, Mr. Hernandez explained that Plaintiff needs to be reminded to go places, she needs to have someone go with her, and she cannot follow directions. (AR at 61-62.)

In contrast, Dr. Paculdo's report stated Plaintiff was:

> [A]lert, cooperative and oriented to time, place, person and situation . . . [h]er memory is intact. Her concentration is fair. Attention span is good. . . . Patient is in contact with reality. There is no thought disorder. . . . There is no confusion or looseness of association. . . . The patient is competent to manage her own funds.

(AR at 125-27.) Dr. Paculdo further noted Plaintiff "communicates and interacts with family members, friends and her neighbors. She can sustain focused attention, complete everyday routine, follow and understand simple instructions." (AR at 127.)

Similarly, Dr. Starrett's report also conflicted with Mr. Hernandez's testimony. Dr. Starrett found:

> The client was alert and cooperative throughout the evaluation. She was oriented by person, place and time. Her simple registration was intact. . . . [Plaintiff] denies any auditory or visual hallucinations. . . . from a psychological standpoint, she appears to be able to follow simple instructions. She interacted appropriately with the interpreter and me. She can do simple tasks.

(AR at 160, 162-63.) Dr. Starrett also noted the Plaintiff appeared to be exaggerating her symptoms. (AR at 162-63.)

The information contained in Mr. Hernandez's questionnaire and testimony conflicted with the available medical evidence from Dr. Paculdo and Dr. Starrett. Moreover, Mr. Hernandez's testimony appeared to be inconsistent with Plaintiff's own testimony. For example, Plaintiff stated that she was unable to leave her home, while Mr. Hernandez stated that Plaintiff went to the market, the mall, or the beach when she felt well. (AR at 61, 69.) Thus, the ALJ did

"give reasons that are germane" for discrediting the testimony of Mr. Hernandez. *See Dodrill*, 12 F.3d at 919. Furthermore, the Court finds that the ALJ's decision to reject Mr. Hernandez's testimony was proper because it was supported by substantial evidence. *See Regennitter*, 166 F.3d at 1298.

**B. The ALJ Considered the Treating Physician's Opinion**

The Plaintiff generally alleges that the ALJ erred by rejecting the opinion of Plaintiff's treating physician, Dr. Horminio Academia, and by giving greater weight to the consulting physicians, Dr. Paculdo and Dr. Starrett. (JS at 9-12.) Plaintiff contends that a treating physician's opinions are entitled to "greater weight," and thus, the ALJ must give clear and convincing reasons for rejecting Dr. Academia's opinion. (JS at 10-13.) Defendant contends that the ALJ properly rejected the treating physician's opinion because his opinion was based on Plaintiff's subjective complaints rather than any objective medical evidence. (JS at 14-15.) Defendant further contends that the ALJ properly rejected Dr. Academia's opinion because it conflicted with the other psychiatric reports in the record. (JS at 13.)

A treating physician's opinion is entitled to greater weight because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). But, "the treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2) (2007).

1. The treating physician's opinion was controverted

If the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on substantial evidence in the record. *Thomas*, 278 F.3d at 957; *Magallanes*, 881 F.2d at 751; *Winans*, 853 F.2d at 647.

Plaintiff underwent evaluations by her treating physician, Dr. Academia, in 2004, and by

her consulting physicians, Dr. Paculdo and Dr. Starrett, in 2003 and 2005, respectively. (AR at 131-34, 125-27, 160-163.) The results of these examinations were inconsistent. Both consulting physicians opined that Plaintiff could perform "at least simple tasks." (AR at 19.) Dr. Paculdo, the psychiatric examiner, determined Plaintiff could perform "detailed and complex tasks; maintain regular attendance; complete a normal workday or workweek; accept instructions from supervisors, interact with co-workers and the public[,] and deal with the usual stresses encountered in competitive work." (AR at 127.) Dr. Starrett, the psychological examiner, concluded that Plaintiff was capable of following simple instructions, could interact appropriately, and had the ability to perform simple tasks. (AR at 163.) In contrast, Dr. Academia, the treating physician, opined that Plaintiff has a preponderance of moderate limitations in functioning, and in some instances, marked functional restrictions. (AR at 131-35.) Considering Dr. Academia's evaluation appears to have been controverted by both Dr. Starrett and Dr. Paculdo, the question presented is whether the ALJ set forth specific and legitimate reasons that are supported by substantial evidence for rejecting Dr. Academia's opinion. *See Thomas*, 278 F.3d at 957.

2. <u>The ALJ set forth specific and legitimate reasons for dismissing Dr. Academia's opinion</u>

Plaintiff contends that the ALJ erred by refusing to give weight to the opinion of her treating physician, Dr. Academia. (JS at 10-12.) Defendant contends that the ALJ properly rejected the assessment of Plaintiff's treating physician regarding her limitations by finding: (1) the record contained extremely limited treatment records by Dr. Academia, (2) Dr. Academia stated he felt further neurological work-up and psychological evaluation were required, and (3) Dr. Academia's assessment was solely based upon the Plaintiff's subjective complaints. (AR at 20.)

The Ninth Circuit has held that an ALJ may properly reject the opinion of a treating physician if such opinion is brief and unsupported by the record as a whole. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (holding that the "ALJ may discredit [the] treating physician['s] opinions that are conclusory, brief, and unsupported by

the record as a whole . . . [or by] objective findings"). The Ninth Circuit has also held that an ALJ may properly reject the opinion of a treating physician if such opinion is not based on objective evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995) (stating that "an opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded, once those complaints have themselves been properly discounted.").

A review of the record indicates that the ALJ properly rejected Dr. Academia's opinion by stating three specific and legitimate reasons, which included extremely limited treatment records, no basis for the opinion other than Plaintiff's subjective complaints and a lack of support from the remainder of the medical record. (AR at 20.) The Court notes that the treatment record from Dr. Academia consists only of a four page mental assessment form, which includes check boxes a physician may use to denote appropriate functioning levels. (*See* AR at 131-134.) Although Dr. Academia determined that Plaintiff had the capability for moderately limited functioning, there is no indication in the record as to how Dr. Academia reached that conclusion. As such, to the extent that the mental assessment form did not contain an explanation for Dr. Academia's conclusions, the ALJ may properly reject the assessment. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (holding that an ALJ may reject check-off forms that do not contain an explanation of the bases of their conclusions). In addition, Dr. Academia acknowledged that Plaintiff should be referred for neurological work-up and psychological testing. (AR at 134.) Such a recommendation raises some question as to whether Dr. Academia had an objective medical basis at the time he rendered his assessment of Plaintiff. Therefore, in light of the inconsistency of Dr. Academia's opinion, with the remainder of the record and his apparent lack of objective medical evidence to support his assessment, the ALJ had the discretion to resolve ambiguities in the evidence and decline to give controlling weight to Dr. Academia's opinion. *See Gallant*, 753 F.2d at 1452 (where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld).

Furthermore, the ALJ observed that Dr. Academia's opinion appeared to be based on Plaintiff's subjective complaints. However, as this Court concluded in section A(1), *infra*, the

ALJ properly determined that Plaintiff lacked credibility. Therefore, the ALJ did not err by disregarding the opinion of Dr. Academia, whose opinion appeared to be premised upon Plaintiff's subjective complaints. *See Andrews*, 53 F.3d at 1043 (stating opinion based upon claimant's complaints may be disregarded once those complaints have been properly discounted). Plaintiff also contends that the ALJ erred by giving greater weight to Dr. Paculdo and Dr. Starrett's opinions over that of Dr. Academia. (JS at 10-12.) The Court notes that consultative examiners' opinions, if supported by clinical tests and observations upon examination, are substantial medical evidence and may be relied upon by the ALJ in order to determine the claimant's RFC. *Andrews*, 53 F.3d at 1041. Where the opinion of the claimant's treating physician is contradicted, however, and the opinions of nontreating physicians are based on independent clinical findings that differ from those of the treating physician, the opinions of the nontreating physicians may themselves be substantial evidence. *Id.* "It is then solely the province of the ALJ to resolve the conflict." *Id.*

Here, Dr. Paculdo and Dr. Starrett's evaluations were based on independent clinical findings. Dr. Paculdo's opinion indicates that he directly observed Plaintiff and conducted his own mental status examination. (AR at 127.) Likewise, Dr. Starrett administered psychological testing, including the Minnesota Multiphasic Personality Inventory II and Test of Memory Malingering and Structured Interview of Reported Symptoms. (AR at 160.) Accordingly, the opinions of Dr. Paculdo and Dr. Starrett represent substantial evidence to support their findings. Thus, by accepting these opinions, the ALJ set forth specific and legitimate reasons, supported by substantial evidence, to justify his opinions, and did not err by giving great weight to the opinions of Dr. Paculdo and Dr. Starrett. *See Andrews*, 53 F.3d at 1041.

### C. <u>The ALJ Did Not Err by Failing to Consider Plaintiff's Inability to Communicate in English</u>

In the last disputed issue, Plaintiff claims that the ALJ's finding that Plaintiff "could read, write and understand English" was improper. (JS at 22.) Plaintiff premises her claim on the ALJ's purported "reliance upon Plaintiff's citizenship certificate as proof of her ability [to read, write and understand English]." ( *Id*.) Plaintiff supports this claim by stating, "[u]nder the

Social Security Regulations an individual between the age of forty-five and forty-nine[8] who is unable to communicate in English or although able to speak and understand English, is unable to read or write in English is at a severe disadvantage in the work force (20 C.F.R. Subpart P Appendix 2 Section 201.00(h)(1))." (*Id.*) Plaintiff's claim is factually and legally unpersuasive.

Factually, the ALJ concluded that Plaintiff could communicate in English after the following colloquy occurred at the hearing on this matter:

> ALR: Mrs. Hernandez, you have presented a citizenship certificate indicating you are a U.S. citizen. This is dated October 28, 1999. You must past [sic] a written and oral examination in English in order to obtain that certificate. Why is it that you can't speak or read English, or understand English?
>
> Plaintiff: There are sometimes that I do understand.
>
> ALJ: Okay. I expect you to understand English today. And I expect you to testify in English today.

(AR at 182-83.) Thus, it appears to the Court that the ALJ may have relied on the Plaintiff's response to his question, rather than her citizenship certificate, to conclude that Plaintiff was capable of testifying in English.[9]

Yet, whether Plaintiff could converse in English is not controlling, and Plaintiff's reliance on 20 C.F.R. Part 404, Subpart P, App. 2, Section 201.00(h)(1) is misplaced. The introductory section to this Code of Federal Regulations provision expressly limits the provision's applicability to Step Five of the disability analysis, where the ALJ examines whether a plaintiff has the RFC to perform "any other work." The Code of Federal Regulations further explain:

> "The following rules reflect the major functional and vocational patterns [where] . . . the individual's impairment(s)

---

[8] At the time Plaintiff applied for SSI benefits, she was 44 years and 10 months old. (JS at 22.)

[9] Notwithstanding the ALJ's ruling, he did allow Plaintiff to use an interpreter for the vast majority of her testimony. (*See* AR at 183-88.)

> prevents the performance of his or her *vocationally relevant past work*. They also reflect the analysis of the various vocational factors . . . in combination with the individual's residual functional capacity . . . in evaluating gainful activity *in other than his or her vocationally relevant past work.*"

20 C.F.R. Part 404, Subpart P, Appendix 2, Section 200.00(a) (emphasis added). Here, the ALJ determined that "[Plaintiff's] medically determinable impairments do not prevent [Plaintiff] from performing her *past relevant work*," as articulated in Step Four. (AR at 21) (emphasis added.) Thus, it follows that the ALJ was not required to consider Plaintiff's English literacy because the ALJ's determination at Step Four that Plaintiff had the RFC to perform her past relevant work, did not warrant proceeding to Step Five, where the ALJ may consider such vocational factors as English literacy.

Accordingly, the Court finds no error by the ALJ with respect to the last disputed issue.

## V. ORDER

Accordingly, **IT IS HEREBY ORDERED** that the decision of the Commissioner is affirmed and the matter is dismissed with prejudice.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: June 11, 2007

JOHN C. RAYBURN, JR.
UNITED STATES MAGISTRATE JUDGE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1